FILED '10 DEC 10 10:57 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

SCOTT WILLIAM KYGER,

        Plaintiff,        Civil No. 07-481-TC

        v.        FINDINGS AND RECOMMENDATION

STATE OF OREGON, et al.,

        Defendants.

COFFIN, Magistrate Judge.

    Plaintiff, an inmate in the custody of the Oregon Department of Corrections, filed a complaint under 42 U.S.C sec. 1983 alleging that his civil rights were violated by defendants' failure to provide him with adequate medical care after an altercation with a fellow inmate. Complaint (#2) p. 9 [First Claim and Second Claim]  Plaintiff also alleges that defendants violated his rights by "tampering with plaintiff's legal mail to present a claim, circumventing the grievance process" and by harassing and intimidating plaintiff. Id., p.

1 - FINDINGS AND RECOMMENDATION

10 [Third Claim].

In a Findings and Recommendation (#59) adopted by the court's Order (#62) entered February 9, 2009, defendants' Motion for Summary Judgment (#37) was allowed in part and denied in part as follows:

> "Defendants' motion for summary judgment as to plaintiff's mail claim should be denied; defendants' motion for summary judgment as to plaintiff's denial of medical care claim should be allowed as to any conduct alleged to have occurred prior to March 26, 2005, on the ground that any claims arising from such conduct are barred by the statute of limitations. Defendants' motion should be denied as to plaintiff's claims arising from conduct alleged to have occurred after March 26, 2005, ie. the allegations set forth above."

Findings and Recommendation (#59) p. 7-8.

Defendants have now filed a Second Motion for Summary Judgment (#77).

As a preliminary matter, states are not "persons" for pupoes of liability under 42 U.S.C. sec. 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Accordingly, plaintiff's claims against the State of Oregon and the Oregon Department of Corrections fail as a matter of law.

In addition, plaintiff apparently seeks to hold defendant Max Williams liable on a theory of respondeat superior. It is well settled that respondeat superior is not a proper basis for liability under 42 U.S.C. § 1983. Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 691-694 (1978); Rizzo v. Goode, 423 U.S. 362, 375-76 (1976); King v. Atiyeh, 814 F.2d 565, 568 (9th Cir. 1987). A supervisor may

2 - FINDINGS AND RECOMMENDATION

be liable based on his or her personal involvement in the alleged deprivation, or if there is a sufficient causal connection between the supervisor's alleged wrongful conduct and the alleged deprivation, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989), but a "supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989), citing Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir. 1984). Plaintiff has failed to allege any facts that would subject Max Williams to liability in this case.

Plaintiff's complaint contains no factual allegations against defendants Harder, Hill, or Hall. In order to state a claim against a named defendant, plaintiff must allege specific facts about that defendant and identify how that defendant's conduct violated his rights. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under section 1983 must be based on the personal involvement of the defendant." Barran v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998). The absence of any factual allegations against a named defendant will entitle that defendant to have the complaint dismissed as to him, pursuant to Fed. R. Civ. P. 12(b). Polk v. Montgomery County, 548 F. Supp. 613, 614 (D.Md. 1982). See also, Morabito

3 - FINDINGS AND RECOMMENDATION

v. Blum, 528 F.Supp. 252, 262 (S.D. N.Y. 1981). Accordingly, Defendants Harder, Hill and Hall are entitled to be dismissed as defendants.

Mail Confiscation Claim: Plaintiff alleges that on "August 5, 2004, SCRI Supervisor of Mail Processing Center, Kathy Stevens and Celia Hernandez confiscated [his] legal mail to prevent [him] from processing a claim and to make contact with an attorney concerning medical issues." Complaint (#2) p. 9. Plaintiff acknowledges that his mail was returned to him "several days later approx. 6 days." Plaintiff's Response in Opposition (#91), p. 9.

Defendants acknowledge that plaintiff's mail was delayed for several days, but argues that the delay occurred because the "CD-28" form that plaintiff attached to his envelope for postage became separated from the envelope in the TCRI mail facilities some time after plaintiff deposited the envelope for mailing. Hernandez Affidavit (#81) p. 3.

The purpose of the CD-28 form is to provide prison staff with an inmate's trust account number and authority to deduct funds from the account for postage. Id. In this case, the CD-28 form was returned to plaintiff with an explanation that it was found loose in the mail facility. Id. p. 3-4. Subsequently, the envelope was returned to plaintiff because it did not have postage. Id., p. 4-5. The return of both items to plaintiff was consistent with ODOC's mail policy.

Defendant Hernandez states: "I did not interfere with

4 - FINDINGS AND RECOMMENDATION

Plaintiff's Kyger's outgoing mail. I did not delay his mail intentionally. I see no evidence that anyone else at ODOC intentionally interfered with Inmate Kyger's mail. I did not send the envelope back to him to delay communication between Kyger and his lawyer or to interfere with his access to the courts." Hernandez Affidavit (#81) p. 3.

Plaintiff has not submitted any evidence to suggest that the delay was due to anything other than the explanation given by Ms. Hernandez (ie. the detached CD-28 form) or that the delay in processing his mail was malicious or intentional.

Plaintiff's mail tampering claim also fails because he has not established that he suffered an actual injury due to the delay in his outgoing mail. Isolated incidents of mail interference, without any evidence of improper motive or resulting interference with the right to counsel or access to the courts, do not give rise to a constitutional violation. See, Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990); see also, Crofton v. Roe, 170 F.3d 957, 961 (9th Cir. 1999) (temporary delay or isolated incident of delay in mail processing does not violated a prisoner's First Amendment rights).

To establish a claim for denial of access to the courts, plaintiff must demonstrate that he has suffered an "actual injury" Lewis v. Casey, 518 U.S. 343, 349 (1996). An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing

5 - FINDINGS AND RECOMMENDATION

deadline or to present a claim." Id. at p. 348; see also, Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir. 1989) (in order to state a claim for denial of access to the courts, an inmate must show a specific instance in which he was actually deprived of access to the courts).

Plaintiff alleges that the mail "confiscation" occurred in connection with his attempt to retain counsel regarding his "medical issues." Complaint (#2) p. 9. However, plaintiff has presented no evidence that the brief delay in his mail prevented him from retaining counsel, filing a complaint, or missing a court deadline.

Plaintiff argues "[t]his legal mail delay is one of the reasons that plaintiff did not meet the February 4, 2006 statute of limitations for filing a sec. 1983 complaint." Plaintiff's Response in Opposition (#91) p. 9. However, I find that a six day delay in early August, 2004, could not have been a substantial factor in missing a February 4, 2006 statute of limitations deadline.

I find that plaintiff has failed to establish either that defendants intentionally interfered with his mail or that the 6 day delay in processing his mail substantially hindered his efforts to pursue a legal claim or caused him any actual injury sufficient to support a First Amendment claim.

Medical Claims: The Findings and Recommendation identified the following alleged "incidents" as within the limitations period:

6 - FINDINGS AND RECOMMENDATION

>    1. "On December 21, 2005, I was transferred to Clakamas(sic)County Jail, where I was denied 'INDOCIN pain medication' for 8 days because TRCI's mecical (sic) staff and transportation officers would not allow my INDOCIN pain medication pills to come with me." Complaint (#2) p. 9.
>
>    2. "On December 28, 2005, I was returned to TRCI, medical staff refused to return the INDOCIN pain pills previously prescribed to me for chronic ear and head pains." Id.
>
>    3. "On January 7, 2007, I asked TCRI Therapeutic Level of Care Committee for a MRI (i.e. Magnetic Resonance Imaging) test to see of reconstruction surgery could fix my inner (L) ear." ... On January 10, 2007, I received a response form RN D. Williams, denying the test because I did not have money to pay for the MRI test." Id.

Findings and Recommendation (#59) p. 6.

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See, Porter v. Nussle, 532 U.S. 731 (2001); Booth v. Churner, 532 U.S. 731 (2001); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002); McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).

Plaintiff did not file a grievance concerning his failure to obtain Indocin at the Clackamas County Jail, or upon his return to TRCI, or the MRI denial. Schutt Affidavit (#83) p. 3; Hicks Affidavit (#84), p. 4; Main Affidavit (#82) p. 3-4. Accordingly, plaintiff's "medical claims" should be dismissed

7 - FINDINGS AND RECOMMENDATION

because plaintiff did not compy with the exhaustion of remedies requirement of the PLRA.

If the district court concludes that the prisoner has not exhausted non-judicial remedies, the proper remedy is dismissal of the claim without prejudice. Waytt v. Terhune, supra. However, in this case, plaintiff's medical claims also fail on the merits.

Plaintiff's allegation about the denial of medication at the Clackamas County Jail fails to state a claim against any defendant in this action. When plaintiff was transferred to the Clackamas County Jail, the Jail became responsible for his care - including medical needs. Gulick Affidavit (#80) p. 6-7. ODOC officials do not have a constitutional right to provide medical care to individuals not in their custody. Plaintiff's claim for inadequate medication while incarcerated in Clackamas County lies solely against Clackamas County.

Moreover, ODOC records indicate that plaintiff took his medication with him when he was transferred from ODOC to the Clackamas County Jail, was provided with alternate pain medication (Tylenol) while incarcerated in Clackamas County and was provided with Indocin upon his return to ODOC custody. Gulick Affidavit (#80) p. 6-8.[1] Thus, plaintiff's denial of pain medication claim fails as a factual matter.

---

[1] In an inmate communication sent by plaintiff to prison staff, plaintiff acknowledges that his Indocin was returned to him in his property when he was returned to TRCI. See, von Ter Stegge Declaration (#85) attachment 2.

8 - FINDINGS AND RECOMMENDATION

Plaintiff's medical claims also fail as a matter of law. In order to prevail on a 42 U.S.C. § 1983 claim that medical treatment has been denied or inadequately rendered, a prisoner must establish that there has been a "deliberate indifference to [his] serious medical needs." Estell v. Gamble, 429 U.S. 97, 104 (1976); Hudson v. McMillian, 503 U.S. 1 (1992); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000); see also, Clements v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).

A determination of "deliberate indifference" requires an examination of two elements: 1.) the seriousness of the prisoner's medical needs, and 2.) the nature of the defendants response. See, McGuckin v. Smith, 794 F.2d 1050, 1059 (9th Cir. 1992) (overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)).

Whether a medical condition is serious is ordinarily a question left to physicians, Brownell v. Figel, 950 F.2d 1285, 1291 (7th Cir. 1991) Davis v. Jones, 936 F.2d 971, 992 (7th Cir. 1991), but in general a medical condition is serious if it is life threatening or poses a risk of needless pain or lingering disability if not treated at once. Id., 936 F.2d at 972; see also, Farmer v. Brennan, 511 U.S. 825, 847 (1994).

To find deliberate indifference, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." McGuckin v. Smith, supra at 1060. Medical malpractice, even gross malpractice, does not amount to a violation of the Eighth Amendment. Wood v. Housewright,

9 - FINDINGS AND RECOMMENDATION

900 F.2d 1332, 1334 (9th Cir. 1990); Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980). Thus, a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment does not raise a claim under 42 U.S.C. § 1983. See, eg., Shields v. Kunkle, 442 F.2d 409, 410 (9th Cir. 1971); Mayfield v. Craven, 433 F.2d 873 (9th Cir. 1970); McKinney v. People of the State of California, 427 F.2d 160 (9th Cir. 1970) (per curiam) and the cases collected in the Annotation, Relief Under Federal Civil Rights Act to State Prisoner Complaining of Denial of Medical Care, 28 A.L.R. Fed. 179, 366-379 (1976).

Because courts lack medical expertise, "where prisoners receive some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgment." Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985); Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1985); Sanchez v Vild, 891 F.2d 240, 242 (9th Cir. 1989); see also, Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996) ("Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations.").

Defendants acknowledge that plaintiff sustained a serious ear injury in 2004 that caused him pain at that time. Memorandum in Support (#78) p. 12. Defendants do not contest plaintiff's claim that he experienced some head and ear pain

10 - FINDINGS AND RECOMMENDATION

in 2007. Id., p. 13. However, there is a dispute as to what was causing plaintiff's pain in 2007; whether defendants responded appropriately to his complaints by providing appropriate pain medication and whether an MRI was necessary.

Plaintiff's claim that he was denied Indocin upon his return to TRCI on December 28, 2005 is contradicted by the record. Plaintiff received pain medication (Tylenol) at the Clackamas County Jail on December 28, 2005. Gulick Affidavit (#80) Attachment 12. Plaintiff received 90 tablets of Indocin on December 31, 200 and another 90 tablets on January 26, 2006.

As discussed above, plaintiff acknowledged in an inmate communication that his Indocin was "in (his) property" when he was returned to TRCI. von Ter Stegge Declaration (85), Attachment 2. Even discounting plaintiff's grievance statement contradicting his claim in this case, he may at most have gone without pain medication for a period of two days - December 29 and 30, 2005.

Temporomandibular Joint Disorder, the condition for which plaintiff received Indocin causes jaw pain and headaches if untreated. Gulick Affidavit (#80) p, 8. It is not life-threatening and does not require hospitalization. Defendants acknowledge that "chronic pain, under extreme conditions, can rise to the level of an Eighth Amendment violation." Memorandum in Support (#78) p. 11. However, neither inconvenience nor *de minimis* injuries implicate the Eighth

11 - FINDINGS AND RECOMMENDATION

Amendment. See, Anderson v. County of Kern, 45 F.3d 1310, 1314-15 (9th Cir. 1995); Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002). A mere delay in providing medical treatment is not sufficient to demonstrate deliberate indifference where the plaintiff has not established any harm resulting from the delay. Shapley v. Nevada Board of Prison Commissioners, 766 F.2d 404, 407 (9th Cir. 1985).

I find that suffering for two days with headache like symptoms does not establish a "serious medical need" and does not rise to the level of a constitutional violation.

In addition, the record reflects that defendants responded to plaintiff's pain complaint and regularly provided him with 30 day supplies of appropriate pain medication. If plaintiff was denied Indocin for a two day period, it was an isolated incident which at worst could be characterized as negligence. In order to establish an Eighth Amendment claim a plaintiff must prove more than an isolated incidence of negligence or "substantial indifference" to his serious medical needs. See, Toissaint v. McCarthy, 801 F.2d 1081, 1111 (9th Cir. 1986) cert denied, 481 U.S. 1069 (1987).

Thus, even if plaintiff may have been temporarily denied access to Indocin, I find that such denial is insufficient to establish a claim under the Eighth Amendment because it was not deliberately indifferent to plaintiff's serious medical needs.

On January 7, 2007, plaintiff sent an inmate

12 - FINDINGS AND RECOMMENDATION

communication form requesting an MRI as follows: "I am requesting an MRI cause of chronic earaches and chronic headaches due to treatment that I need to see if reconstruction of my inner (L) ear can be fixed ... An MRI will show atoms and molecules in solids and it also produces these in human tissues and organ. My ear is an organ and I feel this is necessary to stop deterioration and disfigurement." von Ter Stegge Declaration (#85) Attachment 1. Health Services responded by stating "at this time there is no medical necessity of an MRI." Gulick Affidavit (#80) p. 8.

At the time plaintiff requested an MRI, he had received multiple examinations of his ear and had skull ex-rays showing no signs of skull fracture or major ear damage. An audiogram performed at Holy Rosary Medical Center on March 14, 2005, showed no abnormalities above the normal limits for a man of plaintiff's age. He had a well documented history of mental health issues, sinus/allergy problems, dental issues and "TMJ" [temporomandibular joint and muscle disorders]. Gulick Affidavit (#80) p. 8. In the opinion of Dr. Gulick's, one of plaintiff's treating physicians, "[b]y March 14, 2005, [plaintiff's] pain was not caused by any undiagnosed or untreated aspect of the ear injury he sustained in the chair assault," and an MRI was not necessary in either the diagnosis or treatment of any of the conditions that were likely causing or contributing to the pain symptoms complained of by plaintiff. Gulick Affidavit (#80) p. 8. In Dr. Gulick's

13 - FINDINGS AND RECOMMENDATION

opinion, "the medical treatment (plaintiff) has received from ODOC (was) adequate and timely." Id.

Plaintiff has not offered any evidence other than his own opinion to support claim based on the denial of an MRI. Although plaintiff may disagree with the medical judgment concerning the need for an MRI, his opinion is insufficient to establish a claim under the Eighth Amendment. Miranda v. Munoz, supra; see also, Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981)(a difference of opinion between an inmate and medical authorities does not give rise to a § 1983 claim).

Additional issues: Defendants' Memorandum States: "Upon closer examination of Plaintiff's Complaint, Defendants have identified these additional allegations also remaining in the case." [2]

> \* "Between May 24, 2004 and December 2006, I filed several grievances concerning the confiscation of my legal mail to present a claim, denying me medical records with specific dates, and circumventing the grievance process to prevent me from addressing medical concerns ... In response, defendants Stevens, Hernandez, Hodge, Palmateer, Hicks, and Shelton, gave fraudulent response (sic) to prevent me from consulting with an attorney about issues concerning my ear." [Complaint (#2) pp. 9-10]
>
> \* "Between May 12, 2004 and September 2006, I repeatedly complained to defendant(s) about inmate Price, who hit me on the head February 4, 2004. He was repeatedly transferred on the same bus with me, housed around me and always, 'administratively in

---

[2] Ie. In addition to the claims identified in the court's Findings and Recommendation - discussed above.

14 - FINDINGS AND RECOMMENDATION

>    my face,' but they refused to do anything about it.
>    Instead, defendants created these situations as a
>    form of harassment and intimidation as retaliation
>    fulfilling complaint." (sic) [Complaint (#2), p.
>    10]

Memorandum in Support of Defendants' Second Motion for Summary Judgment (#76) p. 2.

<u>Fraudulent Grievance Response Claim:</u>  Plaintiff has failed to specifically identify any "fraudulent" grievance response or explained how a "fraudulent response" would prevent him from consulting a lawyer. Accordingly it is difficult to discern what plaintiff's claim might be.

Plaintiff alleges that defendants' "fraudulent" grievance responses constituted a "conspiracy to deny plaintiff redress of complaints, equal rights and protection, in violation of the 1st and 14th Amendments." Complaint (#2) p. 11.

As discussed in the court's previous Findings and Recommendation the two year statute of limitations under ORS 12.110(1) applies to plaintiff's section 1983 claims. <u>Sain v. City of Bend</u>, 309 F.3d 1134, 1139 (9th Cir. 2002). Plaintiff filed his complaint in this action on March 30, 2007. Only incidents that occurred within the preceding 2 years are actionable. The alleged "fraudulent responses at issue are as follows:

>    1.) October 11, 2004 response regarding copies
>    of medical records from Shirley Hodge. von Ter
>    Stegge Declaration (#85) Attachment 3, p. 7.
>
>    2.) November 12, 2004 response regarding
>    copies of medical records from Dr. Steve Shelton.
>    <u>Id</u>. p. 9

15 - FINDINGS AND RECOMMENDATION

      3.) January 6, 2005 response regarding medical records from Stan Czerniak signed by Joan Palmateer. <u>Id</u>., p. 11

      4.) August 9, 2004 response regarding plaintiff's mail delay from Celia Hernandez. Hernandez Affidavit (#81), p. 2-3 and Attachments 3 and 4.

      5.) August 24, 2004 response regarding plaintiff's mail delay from Celia Hernandez and Kathy Stevens. <u>Id</u>.

      6.) March 16, 2005 response regarding plaintiff's mail delay from Stan Czerniak, signed by Joan Palmateer. von Ter Stegge Declaration(#85) Attachment 4, p. 6.

Each of these responses is outside of the 2 year statute of of limitations.

Assuming that plaintiff's allegation concerning fraudulent grievance responses could be construed as a First Amendment claim within the statute of limitations, I find as follows.

To establish a viable First Amendment retaliation claim within the prison context, a plaintiff must prove that 1.) a state actor took some adverse action against him 2.) because of 3.) his protected conduct and 4.) that such action chilled the inmate's exercise of his First Amendment rights, and 5.) that the action did not reasonably advance a legitimate correctional goal. <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-568 (9th Cir. 2005).

A grievance response is not an "adverse action." The denial of a grievance is a commonplace event and even an allegedly "fraudulent" response cannot reasonably be

16 - FINDINGS AND RECOMMENDATION

considered to have had a chilling effect on the exercise of an inmate's First Amendment rights.

Plaintiff has not alleged that the responses contained threats of disciplinary action or transfer, or any other indicia of retaliation. See, Rhodes, 408 F.3d at 568. Apparently plaintiff's claim is simply based on his dissatisfaction with the responses he received.

The Oregon Administrative rules provide an appeal right upon the denial of a grievance, and the Prison Litigation Reform Act allows for the filing of a lawsuit upon the exhaustion of the grievance process if it does not have a favorable outcome for the inmate. Under these circumstances, even an allegedly fraudulent response cannot be reasonably be construed as the basis for a First Amendment violation.

Retaliation Claims: Plaintiff sent inmate communications forms to ODOC personnel On September 6, 2005 and December 17, 2005 complaining that he was being transported with Michael Dean Price and also being kept in close proximity to Price in holding cells, despite the fact that he was a danger to plaintiff. Hicks Affidavit (#84), p. 3-4 and Attachments 4; Shutt Affidavit (#83), p. 4 and Attachment 4. In response to both communications, plaintiff was directed to contact the Transportation within his prison to address the issue. Id.

On January 19, 2006, plaintiff filed a formal grievance regarding the transportation issue with Price. The grievance also included a complaint that he was now being housed in the

17 - FINDINGS AND RECOMMENDATION

same unit as Price. Plaintiff's grievance was returned to him because it addressed multiple incidents/complaints in a single grievance in violation of OAR 291-109. Schutt Affidavit (#83) p. 4. Plaintiff was directed to file separate grievances and was provided with the names of the individuals to whom the grievances should be addressed. Id. Plaintiff then filed two separate grievances, but did not appeal the responses he received. Hicks Affidavit (#84), p. 4; Schutt Affidavit (#83), p. 4; Maine Affidavit (#82), p. 3-4. Therefore, plaintiff failed to exhaust his administrative remedies as required by the PLRA.

In addition, plaintiff has failed to allege any specific instance when one of the (unidentified) defendants "created these situations" of intentionally placing plaintiff in proximity to inmate Price, or provide any evidence that such alleged conduct was retaliatory.

<u>Defendant Richard Owens:</u> Plaintiff argues that factual issues remain in this case because Richard Owens was not served with process and made a defendant. Plaintiff's Response (#93) p. 2-3.

Plaintiff is correct that counsel for defendants declined to waive service on Richard Owens. <u>See</u>, Waiver of Service (#8). Therefore, an order directing the U.S. Marshal to serve Mr. Owens should have been entered, but was not. However, based on my findings above, even if Mr. Owens had been served

18 - FINDINGS AND RECOMMENDATION

and made a defendant in this case, he would have been entitled to summary judgment for the same reasons that the other defendants are entitled to judgment as a matter of law. Accordingly, plaintiff was not prejudiced by the failure to serve Richard Owens.

Based on all of the foregoing, I find that there are no genuine issues of material fact remaining in this case and that defendants are entitled to judgment as a matter of law. Defendants' Second Motion for Summary Judgment (#77) should be allowed. This action should be dismissed with prejudice.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to <u>de novo</u> consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or

judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 10 day of December, 2010.

_____
Thomas M. Coffin
United States Magistrate Judge